Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| MANUEL A. ÁLVAREZ TORRES, VIRGINIA RÍOS GONZÁLEZ<br><br>Recurridos<br><br>v.<br><br>SMART APPLIANCE OF PR, INC.<br><br>Recurrente | TA2025RA00280 | REVISIÓN JUDICIAL procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm.: ARE-2025-0006948 |
|---|---|---|

Panel integrado por su presidenta, la jueza Lebrón Nieves, el juez Pagán Ocasio y la jueza Álvarez Esnard.

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 9 de diciembre de 2025.

Comparece ante nos Smart Appliances of PR, Inc. ("Smart Appliances" o "Recurrente") mediante *Revisión Judicial* presentada el 10 de octubre de 2025. Nos solicita la revocación de la *Resolución* dictada el 25 de septiembre de 2025, notificada el 30 de septiembre del mismo año, por el Departamento de Asuntos del Consumidor ("DACo" o "Agencia"). Por virtud del aludido dictamen, el DACo declaró *Ha Lugar* la *Querella* instada por el señor Manuel Álvarez Torres ("señor Álvarez Torres" o Recurrido") y, en consecuencia, condenó a la Recurrente al pago de nueve mil cuatrocientos setenta y siete dólares con cincuenta centavos ($9,477.50), más quinientos dólares ($500.00) en concepto de honorarios de abogados.

Por los fundamentos que expondremos a continuación, **revocamos** el dictamen apelado.

### I.

Surge de los autos que, el 14 de marzo de 2025, el señor Álvarez Torres radicó *Querella* contra Smart Appliances ante la

Oficina Regional de Arecibo del DACo.[1] De la aludida *Querella,* se desprenden las siguientes alegaciones:

> Lamentablemente, el caballero Roberto Rosa y/o Smart Appliances of PR no realiz[ó] el ga[b]inete de mi cocina como solicitado. Hubieron [sic] varios daños defectos por corre[g]ir, pero el más grave y con mucho peso fue el colocar o tapar parte de la venta del fregadero con el mueble del ga[b]inete. "Siempre" se solicitó que el mueble quedara por encima del borde de la ventana. O sea, la ventana dentro del mueble. Se le solicitó desde que comenzaron la instalación que "no" era lo solicitado al Sr. Rosa. Este indicó que eso se iba a arreglar, pero "nunca" lo realizó. Despu[é]s de varios escritos vía texto el Sr. Rosa nunca mostró importancia con el asunto. Intentó callarme diciendo que el mueble era mío y que yo podía arreglarlo pero que [é]l no lo haría. Pasó varios meses tratando de resolver el problema a los daños realizados por el Sr. Roberto Rosa pero sin resultado alguno.
>
> [...]
>
> P.D. Para poder tener mis ga[b]inetes como los solicité necesito mucho dinero el cual no tengo. Por último, el error lo realizó el Rosa al no tomar las medidas de supervisión del proyecto.[2]

En respuesta, el 22 de abril de 2025, la Recurrente presentó *Contestación a la Querella.*[3] Por virtud de este escrito, negó las alegaciones esbozadas por el señor Álvarez Torres. Concretamente, afirmó lo siguiente:

> El mueble se fabricó [e] instaló según el plano preparado y aprobado por la Querellante, según evidenciado en la foto y el plano que se aneja como exhibit.
>
> La Querellante no ha sufrido daño alguno ya que el mueble se entregó tal como se solicitó.
>
> Por tanto, la querella deja de exponer una reclamación que justifique la concesión de un remedio.[4]

Posteriormente, el 18 de junio de 2025, el inspector Edwin Rodríguez presentó *Informe de Inspección* tras celebrarse una inspección ocular.[5] Del aludido informe se desprende los siguientes hallazgos:

> a. La primera gaveta del lado izquierdo del gabinete no cierra totalmente. Se observa que, al cerrar la gaveta no sella totalmente.
>
> b. La puerta del gabinete superior izquierdo, al cerrar choca con la otra puerta en la parte superior.
>
> c. La puerta del gabinete superior y al lado de la ventana deja un espacio abierto entre la puerta y el cajón. No

---

[1] Véase, SUMAC TA, Entrada1, Apéndice 1.
[2] Véase, SUMAC TA, Entrada1, Apéndice, págs. 6-7.
[3] Véase, SUMAC TA, Entrada1, Apéndice 3.
[4] Véase, SUMAC TA, Entrada1, Apéndice 3.
[5] Véase, SUMAC TA, Entrada1, Apéndice 4.

           cierra o sella totalmente. Se recomienda el reemplazo de esta.

d. El querellado alega que, estos señalamientos se pueden corregir, ajustando los goznes que por su construcción están diseñados para cuadrar, añadiendo o liberando presión. Se recomienda el ajuste de estos para un óptimo funcionamiento de puertas y gavetas señaladas.

e. El puente fabricado sobre la ventana es el mayor problema para la querellante. Alegando no haberse instalado por encima del marco de la ventana según su petición.

f. Se observa que, el puente est[á] instalado al mismo nivel que los cajones del gabinete. El puente se sitúa a tres o cuatro pulgadas aproximadas por debajo del tope del marco de la ventana.

g. El funcionamiento de la ventana no est[á] comprometido con esta situación.

h. La foto anejada en la querella, del croque del diseño, guarda relación en la forma en que este se encuentra instalado.[6]

En desacuerdo con el referido informe, el 26 de junio de 2025, Smart Appliances presentó *Objeci[ó]n al Informe de Inspecci[ó]n* en la que la Recurrente cuestionó ciertos hallazgos contenidos en el informe. [7] Así pues, el 8 de agosto de 2025, notificada el 11 de agosto del mismo año, la Agencia señaló para el 22 de septiembre de 2025 la celebración de una vista administrativa.[8] No obstante, el 22 de agosto de 2025, la Recurrente presentó un escrito intitulado *Moción de Continuación de Vista.*[9] Mediante esta, solicitó el reseñalamiento de la vista pautada para el 22 de septiembre de 2025, pues el señor Roberto Rosa, quien es representante de la entidad, estaría fuera de Puerto Rico hasta la noche antes del día de la vista. Por consiguiente, sostuvo que ante los riesgos de que surgieran eventualidades "tales como atrasos y cancelaciones, y en vista que el Sr. Rosa no tendrá tiempoo [sic] para reunirse con su abogado para prepararse para la Vista, es necesario el reseñalamiento".[10]

---

[6] Véase, SUMAC TA, Entrada1, Apéndice 4 págs. 2-3.
[7] Véase, SUMAC TA, Entrada1, Apéndice 5.
[8] Véase, SUMAC TA, Entrada1, Apéndice 6.
[9] Véase, SUMAC TA, Entrada1, Apéndice 7.
[10] Véase, SUMAC TA, Entrada1, Apéndice 7.

De igual manera, el 19 de septiembre de 2025, el señor Álvarez Torres presentó *Moci[ó]n sobre Transferencia de Vista.*[11] Por virtud de esta, el Recurrido solicitó la transferencia de la vista toda vez que no había podido obtener una cotización del estimado de la reparación.

No empece lo anterior, surge del expediente que el 22 de septiembre de 2025, se llevó a cabo la vista en su fondo y el 25 de septiembre de 2025, notificada el 30 de septiembre del mismo año, el DACo emitió *Resolución.*[12] Vale destacar que la Agencia subrayó en su dictamen que, "[e]l querellado Smart Appliance of PR Inc. no compareció, por lo que, se le anotó la rebeldía".[13] Establecido lo anterior, el DACo formuló las siguientes determinaciones de hecho:

1. El querellado Smart Appliance of PR Inc. (en adelante Smart Appliance) es un negocio dedicado a la fabricación de muebles de cocina.

2. En abril de 2023 los esposos querellantes Manuel Álvarez y Virginia Ríos contrataron los servicios del querellado Smart Appliance para la fabricación de unos gabinetes de cocina en panel PVC para su residencia.

3. El precio contratado fue el siguiente:

   -muebles............................................. $11,890.00
   -tope cuarzo/material nivel 1................. $5,280.00
   -full backsplash en technistone.............. $3,250.0
   -fregadero sencillo full size.................... $489.00

4. Al comenzar los trabajos de instalación de los gabinetes hubo un error en las medidas que tomó el querellado, y tuvo que añadirse una pata de cuarzo, lo que aumentó el precio original contratado.

5. Los querellantes fueron pagando a plazos el precio contratado hasta saldar la totalidad de los pagos requeridos por el querellado.

6. Desde que el querellado comenzó la instalación de los gabinetes la co-querellante se percató de que no estaban según solicitado. Por lo que ésta le reclamó al querellado desde un inicio y el querellado le indicó que luego se corregiría, lo cual nunca hizo.

7. Los gabinetes no quedaron según habían sido solicitados por la co-querellante. La altura de los gabinetes no fue la requerida, al instalar el gabinete se tapó la ventana del fregadero con el mueble del gabinete, el cuarzo quedó rayado en varias áreas, tenía errores en el gabinete de alacena, entre otras deficiencias.

8. La co-querellante le reclamó al querellado en varias ocasiones, pero sus gestiones resultaron infructuosas. Por lo que el 14 de marzo de 2025 ésta presentó en el

---

[11] Véase, SUMAC TA, Entrada1, Apéndice 8.
[12] Véase, SUMAC TA, Entrada1, Apéndice 8.
[13] Véase, SUMAC TA, Entrada1, Apéndice 8.

DACO la querella de epígrafe, cuya radicación mediante el sistema electrónico de querellas se procesó el 17 de marzo de 2025.

9. El 17 de junio de 2025 el señor Edwin Rodríguez, investigador del DACO, realizó una inspección de los gabinetes. Posteriormente rindió un informe de inspección, el cual fue notificado a las partes el 18 de junio de 2025. Sus hallazgos y recomendaciones fueron que los siguientes:

-La primera gaveta del lado izquierdo del gabinete no cierra totalmente. Al cerrar la gaveta no sella totalmente.

-Al cerrar la puerta del gabinete superior izquierdo choca con la otra puerta .en la parte superior.

-La puerta del gabinete superior y al lado de la ventana deja un espacio abierto entre la puerta y el cajón. No cierra o sella totalmente. Se recomienda el reemplazo de ésta.

-Se recomienda el ajuste de los goznes para un óptimo funcionamiento de puertas y gavetas.

-Hay un puente fabricado sobre la ventana, el cual está instalado al mismo nivel que los cajones del gabinete. El puente se sitúa a tres o cuatro pulgadas aproximadas por debajo del tope del marco de la vevntana. Subirlo conlleva riesgos de posibles daños a la pared.

10. Para septiembre de 2025 el querellado aun no había respondido a los querellantes por las deficiencias en los gabinetes.

11. El 19 de septiembre de 2025 los querellantes obtuvieron una cotización del negocio GMD PVC & Gypsum Board Projects, LLC para la reconstrucción del mueble de cocina de la parte superior para que la ventana quede totalmente expuesta, subiendo los módulos 6 pulgadas. Ello incluye la remoción del material de cuarzo que está en la pared así como la campana de la estufa. A su vez require [sic] tener mucho cuidado con el tope para que no sufra daños. La cotización asciende a $9,477.50.

12. El querellado ha presentado una actitud temeraria en la situación en controversia.[14]

Cónsono con estas determinaciones de hecho, la Agencia declaró *Con Lugar* la *Querella* interpuesta por el Recurrido y, en consecuencia, ordenó que en un término de veinte (20) días calendario, la Recurrente pagara nueve mil cuatrocientos setenta y siete dólares con cincuenta centavos ($9,477.50). Igualmente, el DACo le impuso a la Recurrente el pago de quinientos dólares ($500.00) por concepto de honorarios de abogados.

---

[14] Véase, SUMAC TA, Entrada1, Apéndice 8. págs. 1-3.

Inconforme con este resultado, el 10 de octubre de 2025, Smart Appliance presentó el recurso de epígrafe en el cual formuló los siguientes señalamientos de error:

> Err[ó] el DACO al anotar la rebeldía de la Querellada y celebrar la Vista sin considerar las mociones de suspensión que habían solicitado ambas partes, los Querellantes y la Querellada.

> Err[ó] el DACO al concluir que la Querellada no realizó el gabinete de la medida contratada toda vez que tapo la ventana del fregadero y que hubo deficiencias en las puertas de los otros gabinetes.

> Err[ó] el DACO al determinar que la Querellada procedió con temeridad e imponer el pago de honorarios de abogado.

El 15 de octubre de 2025, esta Curia emitió *Resolución* en la que se le concedió al Recurrido hasta el 10 de noviembre de 2025 para presentar su postura. No obstante, el 10 de noviembre de 2025, el señor Álvarez Torres presentó *Moci[ó]n Asumiendo Representaci[ó]on Legal y Solicitud de Prorroga,* mediante la cual anunció nueva representación legal y solicitó una prórroga de veinte (20) días para presentar su alegato. Evaluado este escrito, el 12 de noviembre de 2025, esta Curia emitió *Resolución* en la que le concedió al Recurrido hasta el 24 de noviembre de 2025 para presentar su escrito. Oportunamente, el 24 de noviembre de 2025, el Recurrido presentó *Alegato en Oposici[ó]n a Recurso de Revisi[ó]on Administrativa.* Con el beneficio de la comparecencia de las partes, procedemos a exponer la normativa jurídica aplicable al caso ante nuestra consideración.

**II.**

### A. *Estándar de Revisión Judicial de Determinaciones Administrativa*

"Es norma de derecho claramente establecida que los tribunales apelativos, al momento de revisar las determinaciones administrativas, están obligados a conceder deferencia a las decisiones de las agencias en consideración a que estas poseen la experiencia y el conocimiento especializado sobre los asuntos que se

les han delegado". *Katiria's Café v. Mun. de San Juan,* 215 DPR ___ (2025), 2025 TSPR 33, pág. 10. Las determinaciones de una agencia administrativa gozan de una presunción de legalidad y corrección. *Transporte Sonnell, LLC v. Junta de Subastas ACT et al.*, 214 DPR 633, 648 (2024). Al evaluar una determinación administrativa, los foros judiciales analizarán los aspectos siguientes: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial, y (3) si las conclusiones de derecho fueron correctas. *Otero Rivera v. USAA Fed. Savs. Bank,* 214 DPR 473 (2024).

A esos efectos, la Sección 3.14 de la Ley Núm. 201-2003, conocida como Ley de Procedimiento Administrativo Uniforme (LPAU), 3 LPRA sec. 9654, preceptúa los componentes distintivos de un dictamen final. En específico, esa disposición establece que una resolución u orden final debe incluir: (1) determinaciones de hechos, (2) conclusiones de derecho y (3) una advertencia sobre el derecho a solicitar reconsideración o revisión judicial. *Katiria's Café v. Mun. de San Juan,* supra, pág. 3.

Ahora bien, en cuanto las determinaciones de derecho, nuestra más Alta Curia en *Vázquez et al v. DACo,* 215 DPR ___ (2025), 2025 TSPR 56, incorporó la doctrina discutida en *Loper Bright Enterprises v. Raimondo,* 603 U.S. 369, 144 S.Ct. 2244, 219 L.Ed.2d 832 (2024), en cuanto a que los tribunales no tienen que darle deferencia a la interpretación de derecho que haga una agencia simplemente porque la ley es ambigua. En aquella ocasión, nuestro Máximo Foro concluyó que "la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales" por lo cual enfatizó que, "al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos". *Vázquez et al v. DACo,* supra, pág. 32.

### B. Debido proceso de ley en el derecho administrativo

Nuestro ordenamiento constitucional reconoce el derecho a al debido proceso de ley en toda actuación en la cual el Estado intervenga con la vida, la libertad o la propiedad de una persona. Véanse el Artículo II de la Sección 7 de la Constitución de Puerto Rico, Const. P.R., Art. II, Sec. 7, LPRA, Tomo 1, y las Enmiendas V y XIV de la Constitución de Estados Unidos, Const. EE. UU., LPRA, Tomo I. Mediante tales principios, se asegura que toda persona tenga un proceso justo con las debidas garantías que ofrece la ley tanto en el ámbito judicial como administrativo. *Com. Elect PPD v. CEE et al.*, 205 DPR 724, 743 (2020).

Así pues, esta protección constitucional abarca dos vertientes: la sustantiva y la procesal. En cuanto a la vertiente sustantiva, esta busca proteger y salvaguardar los derechos fundamentales de las personas. *PVH Motor v. ASG*, 209 DPR 122, 130 (2022). En cambio, la vertiente procesal requiere que, de verse afectado algún derecho de propiedad o libertad de un ciudadano, este tendrá acceso a un proceso que se adherirá a los principios de justicia e imparcialidad. *Indulac v. Unión*, 207 DPR 279, 296 (2021).

Cónsono con lo anterior, el Tribunal Supremo de Puerto Rico especifica que la dimensión procesal de este derecho en el contexto adjudicativo exige como mínimo: (1) la notificación adecuada del proceso; (2) el proceso ante un juez imparcial; (3) la oportunidad de ser oído; (4) el derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) tener asistencia de un abogado, y (6) que la decisión se base en el expediente. *PVH Motor v. ASG, supra,* pág. 131.

En cuanto al foro administrativo, el Tribunal Supremo de Puerto Rico discutió en *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,* 2025 TSPR 33; 215 DPR ___ (2025), el alcance de esta garantía de naturaleza constitucional:

En el ámbito procesal, la exigencia de que las agencias provean un debido proceso de ley no constituye una camisa de fuerza que prive a estos de dirigir a sus procesos de forma justa, práctica y flexible. *Almonte et al. v. Brito*, supra; *López Vives v. Policía de P.R.*, 118 DPR 219, 230–31 (1987) ("El debido proceso no es un 'molde rígido que prive de flexibilidad' a los organismos administrativos, [...], pero requiere un proceso justo y equitativo que respete la dignidad de los individuos afectados"); *Pérez Ríos v. Hull Dobbs*, 107 DPR 834, 841 (1978) ("Como se sabe, el debido procedimiento de ley ofrece protección contra la posible arbitrariedad administrativa, pero no es un molde rígido que prive de flexibilidad responsable a dichos procedimientos").

A tenor con lo anterior, la Sección 3.1 de la LPAU, *supra*, 3 LPRA sec. 9641, según enmendada ("LPAU"), reconoce las siguientes garantías: (a) derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte; **(b) derecho a presentar evidencia**; (c) derecho a una adjudicación imparcial; y (d) derecho a que la decisión sea basada en el expediente.

En virtud de estos derechos, la Sección 3.9 de la LPAU, *supra*, 3 LPRA sec. 9649, regula el proceso de notificación ante los organismos administrativos:

La agencia notificará por escrito a todas las partes o a sus representantes autorizados e interventores la fecha, hora y lugar en que se celebrará la vista adjudicativa. La notificación se deberá efectuar por correo, ordinario o electrónico, o personalmente con no menos de quince (15) días de anticipación a la fecha de la vista, excepto que, por causa debidamente justificada consignada en la notificación, sea necesario acortar dicho período, y deberá contener la siguiente información:

(a) Fecha, hora y lugar en que se celebrará la vista, así como su naturaleza y propósito.

(b) Advertencia de que las partes podrán comparecer por derecho propio, o asistidas de abogados incluyendo los casos de corporaciones y sociedades.

(c) Cita de la disposición legal o reglamentaria que autoriza la celebración de la vista.

(d) Referencia a las disposiciones legales o reglamentarias presuntamente infringidas, si se imputa una infracción a las mismas, y a los hechos constitutivos de tal infracción.

(e) Apercibimiento de las medidas que la agencia podrá tomar si una parte no comparece a la vista.

(f) Advertencia de que la vista no podrá ser suspendida.

Con relación al asunto de incomparecencia, la Sección 3.10 de la LPAU, *supra*, 3 LPRA sec. 9650, dispone que si una parte debidamente notificada no comparece a la conferencia con

antelación a la vista, o a cualquier otra etapa durante el procedimiento adjudicativo, el funcionario que presida la misma podrá declararla en rebeldía y continuar el procedimiento sin su participación, pero notificará por escrito a dicha parte su determinación, los fundamentos para la misma y el recurso de revisión disponible.   No obstante, para activar este procedimiento sancionador es necesario que se aperciba a la parte debidamente a tenor con el inciso (e) de la Sección 3.9 de la LPAU, *supra*.

**III.**

En el presente recurso, la Recurrente nos solicita la revocación de la *Resolución* recurrida. Esboza como primer señalamiento de error, que el DACo incidió al anotarle la rebeldía sin haber considerado dos mociones de suspensión de vista que dicho foro tenía ante su consideración. Alega, como segundo señalamiento de error, que la Agencia incidió al concluir que la Recurrente no realizó el gabinete con la medida pactada. Finalmente, como tercer error, sostiene que el DACo erró al imponerle honorarios de abogado. Veamos.

Por estar íntimamente relacionados entre sí, procedemos a resolver los tres (3) señalamientos de error esbozados por la Recurrente de forma conjunta.  Se desprende del expediente ante nuestra consideración que el 8 de agosto de 2025, el DACo señaló una vista administrativa para el **22 de septiembre de 2025**. Ahora bien, **el 22 de agosto de 2025**, a un mes de celebrarse la aludida vista, Smart Appliance radicó *Moción de Continuación de Vista*. En dicho escrito la Recurrente expuso que el señor Roberto Rosa, representante de la entidad, se encontraría fuera de Puerto Rico hasta la noche antes del día de la vista, por lo que tomando en consideración el riesgo de que el vuelo de regreso pudiera atrasarse y a la imposibilidad de poderse reunir con su abogado para prepararse, solicitó que se recalendarizara la vista administrativa.

Asimismo, en su escrito, la Recurrente propuso los días 1,2,6, y 8 de octubre de 2025 como fechas hábiles para llevarse a cabo la vista administrativa y, además, anejó prueba referente a que el señor Roberto Rosa estaría fuera de la jurisdicción. Vale destacar que, de la misma manera, el 19 de septiembre de 2025, el Recurrido también solicitó el reseñalamiento de la vista.

No empece a lo anterior, conforme surge del expediente, el DACo **no resolvió ninguna de estas dos (2) solicitudes de reseñalamiento de vista**. De esta forma, la Agencia llevó a cabo la vista administrativa en la fecha pautada, a saber, el 22 de septiembre de 2025, sin la comparecencia de la Recurrente, a quien se le anotó la rebeldía. Ello, pese a que Smart Appliance, diligentemente y con anticipación, comunicó oportunamente la dificultad razonable para acudir a la vista en la fecha señalada.

Ante este cuadro, somos del criterio de que el DACo violentó el debido proceso de ley de la Recurrente al no resolver la solicitud de reseñalamiento de vista administrativa radicada por esta parte y, por consiguiente, dejarla desprovista de su día en corte, impidiéndole presentar evidencia para defenderse de las alegaciones que pesaban en su contra. Este proceder por parte del DACo hace de la resolución recurrida una nula por violentar el debido proceso de ley de la Recurrente. Cónsono con lo anterior, corresponde **revocar en su totalidad** la *Resolución* emitida por el DACo el 25 de septiembre de 2025, notificada el día 30 de del mismo mes y año. Consecuentemente, se devuelve el caso al foro administrativo para la continuación de los procesos conforme lo exige nuestro ordenamiento jurídico. Cabe aclarar que esta determinación no implica una adjudicación en los méritos de la controversia presentada ante nuestra consideración.

### IV.

Por los fundamentos expuestos, **revocamos** el dictamen recurrido, y se devuelve el caso para la continuación de los procedimientos de conformidad con lo aquí resuelto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones